UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| COUNTY OF MADISON, STATE OF ILLINOIS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL EMERGENCY MANAGEMENT AGENCY, *et al.*, <br><br> Defendants. | Case No. 10-cv-919-JPG-DGW |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs' Motion for Preliminary Injunction (Doc. 6). This matter also comes before the Court on Defendants' Motion to Dismiss (Doc. 26), which also responded to Plaintiffs' request for injunctive relief. Plaintiffs filed a Memorandum in Opposition (Doc. 39) thereto, to which Defendants filed a Reply (Doc. 44). Plaintiffs further supported their preliminary injunction motion with a supplemental Memorandum (Doc. 50). In addition to considering the parties' extensive and thorough briefs, the Court held oral argument on the instant motions on July 14, 2011.

For the following reasons, the Court, *inter alia*, **DENIES** Plaintiffs' motion for preliminary injunction and **GRANTS** Defendants' motion to dismiss.

## RECENT BACKGROUND

Since Plaintiffs filed their Complaint (Doc. 2) and preliminary injunction motion, there have been significant factual developments in this case. Perhaps most importantly, the Flood Insurance Rate Maps (hereinafter "FIRMs") that lie at the heart of this lawsuit — namely, those published by Defendant Federal Emergency Management Agency (hereinafter

"FEMA") on July 15 and 22, 2009 — will *never* be finalized.  In fact, pursuant to congressional mandate, FEMA can no longer employ the "without levee" analysis that produced the 2009 FIRMs; rather, in the future, FEMA must follow "some alternative technique" analysis that its engineers are now developing.  Put simply, FEMA has returned to the drawing board with respect to the American Bottoms area and similar regions across the country.  Meanwhile, preexisting FIRMs that recognize the five underlying levees as adequate remain effective.  Those maps indefinitely control flood insurance rates and building code regulations in the American Bottoms area.

Plaintiffs maintain that the foregoing developments solely relate to the current status of the FIRMs and that FEMA's decision to not accredit the levees presents a separate, ongoing problem.  Plaintiffs trace this problem back to letters sent to the Plaintiff communities in October 2007.  One such letter, sent from the director of FEMA Region V's mitigation division to the mayor of Plaintiff Village of Alorton on October 5, 2007, states as follows:

> Recently, FEMA was informed by the U.S. Army Corps of Engineers (USACE) that they have determined the levees [at issue] do not meet the requirements set forth in the Code of Federal Regulations, Title 44, Section 65.10 (44 CFR 65.10), entitled "Mapping of Areas Protected by Levee Systems".  Since the levees and levee system [at issue] do not meet the requirements set forth in 44 CFR 65.10, *they will be de-accredited* and therefore will not be shown on the future DFIRM as providing protection from the base flood.

Doc. 2-7, p. 1 (emphasis added).  In addition, Plaintiffs are troubled by the allegedly unsupported and secretive means by which FEMA decided to publish the 2009 FIRMs and not renew the levees' accreditation.  With these concerns in mind, Plaintiffs now request the

following two types of relief: (1) "a declaratory judgment that FEMA has presented no evidence that the levee systems are inadequate . . . [;]" and (2) "[a]n injunction prohibiting FEMA from de-accrediting the levee systems without first complying with [the] required notice and consultation [of 42 U.S.C. § 4107 and 44 C.F.R. § 66] . . . ."[1] Doc. 50, p. 2-3.

Notably, FEMA affirmatively stated at oral argument that the levees *are* currently accredited.[2] FEMA maintains that this is not so much a position as it is the law; more precisely, binding law dictates that the last FIRM issued as a final determination remains the operative map over the corresponding region, and the pre-2009 FIRMs recognized the levees as adequate and accredited. FEMA is not sure when new preliminary FIRMs will issue or be finalized. In the interim, the agency refuses to retract the letters that were sent out in October 2007.

---

[1]As discussed *infra*, this relief is quite different from what Plaintiffs originally requested in their motion.

[2]Plaintiffs make much ado over a section of FEMA's website dedicated to answering frequently asked questions (hereinafter "FAQs") about any new analysis of levees. Doc. 50-1, p. 6-7 ("Q: Is the new [some alternative technique] approach going to be applied to every new mapping activity with *unaccredited* levees, or do communities need to request it? A: It will be applied to all new and ongoing mapping activities.") (emphasis added). Plaintiffs believe these FAQs demonstrate that the American Bottoms levees have gone from a "will be deaccredited" state to a "currently deaccredited" status.
    The Court finds Plaintiffs' emphasis on the FAQs to be unwarranted. First, the FAQs do not directly support the proposition that the levees are currently deaccredited. To wit, the new method of levee analysis likely applies to both deaccredited levees and accredited levees, like the American Bottoms area, seeking re-accreditation. More importantly, FEMA's sworn representation in open court that the American Bottoms levees are currently accredited dispels any contrary inference that Plaintiffs may draw from a section of FEMA's website.

## ANALYSIS

### I. Preliminary Injunctions Generally

Preliminary injunctive relief is designed "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortg. Corp. v. Platinum Fin. Group Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). A party seeking a preliminary injunction must make a threshold showing that (1) it has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) it will suffer irreparable harm if the injunction is not granted. *Ferrell v. U.S. Dep't of Housing and Urban Dev.*, 186 F.3d 805, 811 (7th Cir. 1999). If the moving party is able to establish these three factors, the Court must then balance the harms to both parties using a "sliding scale" analysis, also taking into consideration the effect that granting or denying the injunction will have on the public. "[T]he greater the moving party's likelihood of prevailing on the merits, the less strongly it must show that the balance of harms weighs in its favor." *Id*. at 811.

### II. This Matter Should Be Immediately Dismissed with Prejudice; Thus, a Preliminary Injunction Will Not Issue

In seeking injunctive relief, Plaintiffs immediately run into a wall in that they are unable to demonstrate a likelihood of success on the merits due to the doctrines of sovereign immunity, mootness, and ripeness. More notably, those doctrines collectively and independently dictate that this matter must immediately be dismissed; as such, each will be addressed in kind. Because Plaintiffs have not shown a likelihood of success on the merits, the Court will not issue findings on the other preliminary injunction factors. *See Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994).

### A. Sovereign Immunity

First and foremost, sovereign immunity bars Plaintiffs from prosecuting the present suit against Defendants. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Federal officers sued in their official capacities — like Defendant W. Craig Fugate in the case at bar — are entitled to the same immunity because a suit against a federal officer in his official capacity is tantamount to a suit against the United States. *See, e.g., Maus v. Curran*, 945 F. Supp. 1217, 1219 (E.D. Wis. 1996). Notably, "[s]overeign immunity is not a jurisdictional doctrine." *Wis. Valley Improvement Co. v. United States*, 569 F.3d 331, 333 (7th Cir. 2009) (citing *United States v. Cook Cnty.*, 167 F.3d 381 (7th Cir.1999)). *Accord Blagojevich v. Gates*, 519 F.3d 370, 371 (7th Cir. 2008) ("Sovereign immunity concerns the remedy rather than adjudicatory competence.").

Section 4104(g) of Title 42 represents a *limited* waiver of Defendants' sovereign immunity. It states, in pertinent part, as follows:

> Any appellant aggrieved by any *final determination of the Director* upon administrative appeal, as provided by this section, may appeal such determination to the United States district court for the district within which the community is located not more than sixty days after receipt of notice of such determination. . . . During the pendency of any such litigation, all final determinations of the Director shall be effective for the purposes of this chapter unless stayed by the court for good cause shown.

42 U.S.C. § 4104(g) (2006) (emphasis added). The only other portion of section 4104 that references a "final determination" is subsection (e), which makes clear that such a

determination represents the end of the administrative process.[3]

### 1. Defendants Did Not Waive Sovereign Immunity

In the case at bar, Plaintiffs jumped the gun by filing this lawsuit prior to issuance of a final determination by the FEMA director. A plain reading of the statute makes clear that a "final determination" of the FEMA director triggers a 60-day window of judicial review. *Zeigler Coal Co. v. Dir., Office of Workers' Comp. Programs* 326 F.3d 894, 900 (7th Cir. 2003) ("The primary rule of statutory interpretation is that words used in statutes must be given their ordinary and plain meaning."). Plaintiffs do not dispute that FEMA never issued letters of final determination, which typically close out the administrative process, with respect to the American Bottoms area. In fact, Plaintiffs' complaint repeatedly refers to the underlying FIRMs as "preliminary" and "proposed." Thus, it logically follows that Defendants did not waive sovereign immunity to this suit and that this case must be dismissed.

---

[3]Subsection (e) states, in relevant part, as follows:

> Until the conflict in data is resolved, and the Director makes a final determination on the basis of his findings in the Federal Register, and so notifies the governing body of the community, flood insurance previously available within the community shall continue to be available, and no person shall be denied the right to purchase such insurance at chargeable rates. . . . The community shall be given a reasonable time after the Director's final determination in which to adopt local land use and control measures consistent with the Director's determination. The reports and other information used by the Director in making his final determination shall be made available for public inspection and shall be admissible in a court of law in the event the community seeks judicial review as provided by this section.

42 U.S.C. § 4104(e) (2006).

## 2. Plaintiffs Misinterpret 42 U.S.C. § 4104(g)

Undeterred, Plaintiffs argue that the window of judicial review closes 60 days after FEMA's final decision as to their administrative appeal. This interpretation, however, is not supported by a plain and ordinary reading of 42 U.S.C. § 4104(g). While the subsection does mention final determination "upon administrative appeal," this reference conveys that judicial review will only be available if one has administratively appealed FEMA's proposed course of action. In other words, the three-word prepositional phrase simply provides an exhaustion prerequisite and does not add to the statute of limitations trigger.

Plaintiffs' interpretation makes even less sense in the context of subsection (e) and the latter half of subsection (g) of the statute. Subsection (e) — again, the only other portion of section 4104 that mentions a "final determination" — implicitly discusses letters of final determination and explicitly refers to a phase of the administrative process that was never reached in this case. Meanwhile, the second half of subsection (g), which states that a final decision may be stayed by a federal court for good cause, would be rendered meaningless if the Court were to adopt Plaintiffs' interpretation. Federal courts surely have the power to stay the finalization of flood maps, but an agency's determination that one has exhausted the administrative process is not "effective" in the sense that it can be stayed by a federal court.[4]

The legislative history of § 4104(g) further refutes Plaintiffs' interpretation. Senate Report 93-583 states, in pertinent part, as follows: "Individual landowners who have exhausted their administrative remedies under this section may also appeal to the court, but

---

[4]This analysis applies with equal force to the corresponding regulation, 44 C.F.R. § 67.12.

any appeal must be taken within 60 days after the community is given formal notice of the *Secretary's determination* . . . ." Pub. L. No. 93-234, *reprinted in* 1973 U.S.C.C.A.N. 3217, 3231 (emphasis added). The only other references to "the Secretary's determination" in that paragraph of Senate Report 93-583 are to a "final determination" that clearly relates to the finalization of flood maps, not the end of the administrative appeals process.[5]

This Court's understanding of § 4104(g) is not novel, as it has been reached by several other district courts. *See, e.g., City of Biloxi, Miss. v. Giuffrida*, 608 F. Supp. 927, 929 (S.D. Miss. 1985); *City of Trenton v. Fed. Emergency Mgmt. Agency*, 545 F. Supp. 13, 16-17 (E.D. Mich. 1981). Plaintiffs cite the non-binding decision of *Columbia Venture LLC v. South Carolina Wildlife Federation*, 562 F.3d 290 (4th Cir. 2009) to bolster their interpretation of § 4104(g), however, that case merely reiterates the principle that the FEMA director's final determination commences the 60-day window of judicial review.

Finally, common sense dictates that the Court not adopt Plaintiffs' § 4104(g) interpretation. As Defendants point out, it would defy logic if the window of judicial review hinged on receipt of a letter that FEMA is under no obligation to ever write.

---

[5]Specifically, the relevant portion of the paragraph reads as follows:

> Until the conflict in data is resolved by the Secretary's *final determination*, and the community is so notified, the entire community remains eligible for flood insurance at subsidized rates. After the Secretary's *final determination* (if it occurs after December 31, 1974), actuarial rates become immediately applicable to properties subsequently built within the identified areas having special flood hazards, but the community is given a reasonable time in which to adopt the necessary land use measures and/or to appeal to the appropriate United States District Court. . . . .

Sen. Rep. 93-583, Pub. L. No. 93-234, *reprinted in* 1973 U.S.C.C.A.N. 3217, 3231.

### 3. Plaintiffs' Constitutional Claims Cannot Be Heard

Perhaps sensing that their understanding of 42 U.S.C. § 4104(g) was premised on a misassumption, Plaintiffs contend that this Court currently maintains jurisdiction over their constitutional claims, namely Counts II-VI of the operative complaint. This argument may be disposed of quickly. The Supreme Court has held that a statutory prerequisite to judicial review applies to constitutional claims. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 10 (2000) ("The [judicial review] statute [of the Medicare Act] plainly bars § 1331 review . . . irrespective of whether the individual challenges the agency's denial on evidentiary, rule-related, statutory, constitutional, or other legal grounds."). Indeed, it would make little sense for Congress to enact a statutory prerequisite to judicial review just to have that prerequisite circumvented by a plaintiff alleging constitutional violations. The cases cited by Plaintiffs, which interpreted statutes so as to avoid *total* preclusion of judicial review, are inapposite in light of § 4104(g)'s express authorization of judicial review. Plaintiffs' reliance on *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949) is similarly misplaced in that they do not seriously dispute that Fugate had authority to act in the case at bar. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984) ("[A] state officer may be said to act *ultra vires* only when he acts 'without any authority whatsoever." (citation and quotation marks omitted)).

### B. Mootness and Ripeness

Even if Plaintiffs somehow circumvented sovereign immunity and its effect on this litigation, the doctrines of mootness and ripeness ensure prompt dismissal of this matter.

Mootness is perhaps best understood as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Jones v. Sullivan*, 938 F.2d 801, 805 (7th Cir. 1991) (citation and quotation marks omitted). If a case is moot, it does not represent a "case or controversy" as understood by Article III of the Constitution. *Charles v. Daley*, 749 F.2d 452, 456 (7th Cir. 1984).

Meanwhile, ripeness is reviewed by evaluating 1) "the fitness of the issues for judicial decision" and 2) "the hardship to the parties of withholding court consideration." *Abbott Labs v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds*. Claims are not fit for adjudication if premised upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation and quotation marks omitted).

> **1. The Relief Sought in the Motion for Preliminary Injunction Demonstrates that the Motion Is Moot and Unripe**

The recent factual developments chronicled *supra* raise significant concerns as to the justiciability of this litigation. This is perhaps best evidenced by reviewing the prayers for relief contained in Plaintiffs' motion for preliminary injunction and complaint. Plaintiffs' motion prays for an "Order staying any Letter of Final Determination or any action of FEMA to finalize *the* preliminary [FIRMs] for the American Bottoms area of Madison, St. Clair and Monroe Counties, Illinois . . . ." Doc. 6, p. 6-7 (emphasis added). Since the filing of this motion, FEMA has consistently stated that the referenced July 2009 FIRMs will *never* be finalized. Moreover, the preexisting FIRMs, which recognize the levees as adequate, remain

10

effective. As such, it can hardly be said that Plaintiffs still maintain a necessary personal interest for this matter to not be moot; likewise, the fact that the impending FIRMs *may* vary from those published in 2009 demonstrates, à la *Texas*, the unripeness of Plaintiffs' request for a preliminary injunction.

Because several months passed between Plaintiffs' motion and oral argument thereon, Plaintiffs refined their prayer for "injunctive" relief in a supplemental brief. Specifically, Plaintiffs now ask for the following two forms of relief: (1) "a declaratory judgment that FEMA has presented no evidence that the levee systems are inadequate . . . [;]" and (2) "[a]n injunction prohibiting FEMA from de-accrediting the levee systems without first complying with required notice and consultation [of 42 U.S.C. § 4107 and 44 C.F.R. § 66] . . . ." Doc. 50, p. 2-3. The unavailability of these forms of relief further demonstrates that Plaintiffs' motion is moot and unripe.

The Declaratory Judgment Act (hereinafter "the Act") governs requests for declaratory judgment. The Act states, in pertinent part, as follows: "In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (West 2011). Because sovereign immunity and justiciability concerns preclude the Court from analyzing the merits of this case, it is highly doubtful that an actual controversy exists for purposes of the Act. Even assuming *arguendo* that an actual controversy exists, Plaintiffs are not asking the Court to declare its rights or the legal relations amongst the parties. Rather, they are asking the Court to declare a fact, which

would clearly breach the bounds of the Act.[6]

Plaintiffs' request for a prohibitory injunction is similarly unfounded. In essence, Plaintiffs are asking the Court to enjoin Defendants from not complying with the United States Code, Code of Federal Regulations, and other binding law in the future. Simply stated, it is not this Court's job to preemptively remind parties of their legal obligations; that is what laws and lawyers are for. More importantly, if the Court promulgated any such prohibitory injunction, it would inherently run afoul of Federal Rule of Civil Procedure 65. *See* Fed. R. Civ. P. 65(d)(1)(B)-(C) (requiring every injunction to "state its terms specifically" and "describe in reasonable detail — and not by referring to the complaint or other document — the act or acts restrained or required"); *City of Mishawaka, Ind. v. Am. Elec. Power Co., Inc.*, 616 F.2d 976, 991 (7th Cir. 1980) (vacating injunction because, *inter alia*, it merely prohibited violation of the Sherman Act); *Payne v. Travenol Labs., Inc.*, 565 F.2d 895, 898 (5th Cir. 1978) ("'Obey the law' injunctions cannot be sustained").

### 2. The Relief Sought in the Complaint Demonstrates that This Case Is Moot and Unripe

The foregoing analysis wipes out much of the prayer for relief in Plaintiffs' complaint, and only a handful of requests remain.[7] First, Plaintiffs apparently pray for enjoinder of the

---

[6] Furthermore, even where there is an actual controversy, a court may refuse to exercise its jurisdiction and may refuse to grant declaratory relief for prudential reasons. *Alcan Aluminum Ltd. v. Dep't of Revenue of State of Or.*, 724 F.2d 1294, 1298 (7th Cir. 1984). Here, in exercising prudence, the Court will not engage in a daunting review of the administrative record in order to possibly declare that the deaccreditation decision was arbitrary and capricious.

[7] Plaintiffs concede that Defendants are immune to money damages due to sovereign immunity principles.

12

issuance or finalization of *any* FIRMS. The Court will not be entertaining this overbroad request because FEMA has both the right and the duty to issue FIRMs for obvious policy reasons. Next, the "Administrative Appeal Plaintiffs" ask that the deaccreditation of the levees be deemed unlawful. Because FEMA now acknowledges that the levees are not deaccredited, the Court refuses to sift through a voluminous administrative record to possibly find the levees *should* never have been deaccredited. While the Court acknowledges the distinction between Plaintiff's request and FEMA's current stance, this distinction is rendered meaningless because "the without levee" analysis will not be employed by FEMA in the next administrative go-round. Indeed, the yet-to-be-developed "some alternative technique" analysis may result in different FIRMs and will, at the very least, produce a different approach to the creation of such FIRMs. Finally, the complaint asks the Court to find that 42 U.S.C. § 4107 and 44 C.F.R. § 67.6 violate due process insofar as they preclude judicial review of Plaintiffs' constitutional claims. As discussed *supra*, judicial review is available for Plaintiffs' constitutional claims *so long as* one follows the statutory pathway authorizing same, namely § 4104(g).

In sum, the relief sought by Plaintiffs — both through their motion for preliminary injunction and the operative complaint — is either no longer available or not authorized by law. This lack of personal interest, which existed at the beginning of this case, means that this matter is now moot. Furthermore, because there are no issues currently fit for adjudication, this matter lacks ripeness. Being fully advised of the premises, the Court has no choice but to dismiss all of Plaintiffs' claims.

### III. FEMA Has Enjoyed the "Potomac Two-Step" in Recent Months, But This Court Don't Dance[8]

As a final matter, the Court notes that FEMA has danced the "Potomac Two-Step" over the last few months. At oral argument, FEMA acknowledged that the letters of October 2007 are no longer operative and, more importantly, that the levees of the American Bottoms area are currently accredited. Yet, FEMA refused to issue or promulgate a written notice evincing same.

The Court cannot comprehend why FEMA — a governmental agency whose mission is to serve the public — cannot or will not withdraw or rescind, in written form, the portion of the October 2007 letters stating the levees and levee systems do not meet regulatory requirements and will be deaccredited. Even courts have been known to withdraw and correct orders and opinions when circumstances call for it. Here, congressional mandate requires FEMA to prospectively employ a different analysis standard that has not yet been developed; therefore, the preexisting FIRMs that recognize the underlying levees as adequate remain effective. If the levees and levee systems are currently accredited and subject to future analysis under an undefined standard and a renewed administrative review process, why not say so in writing?

Because FEMA feels compelled to talk out both ends of its mouth by taking one position in writing and another verbally before the Court, this Court feels obligated to speak as well. **The Court wishes to make clear — to anyone with any interest whatsoever in the American Bottoms area, especially current, prospective, and formerly prospective**

---

[8]With apologies to Tom Clancy and his *Clear and Present Danger*.

**residents and businesses of the region — that the levees of the American Bottoms are accredited and have been accredited at all times relevant to this lawsuit.**

## CONCLUSION

For the reasons discussed throughout this memorandum and order, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction (Doc. 6) and **GRANTS** Defendants' Motion to Dismiss (Doc. 26), whereby the Court **DISMISSES** this matter **with prejudice**. Further, the Court **DENIES as moot** the pending Motion to Compel (Doc. 29). Finally, the Court **DIRECTS** the Clerk of Court to enter judgment *instanter*.

**IT IS SO ORDERED.**
**DATED: August 1, 2011**　　　　　　　　　　　　　　　　　　s/ J. Phil Gilbert
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**J. PHIL GILBERT**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**DISTRICT JUDGE**